The undersigned reviewed the prior Order of Dismissal based upon the record and the brief before the Full Commission. The appealing party showed good grounds to vacate the Order of Dismissal and to consider the evidence. After review of the same, the Full Commission entered the August 15, 1997 Opinion and Award. Thereafter, after considering plaintiff's motion to amend, the undersigned amend the August 15, 1997 Opinion and Award as follows:
***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties as
STIPULATIONS
1. Employee-plaintiff sustained a compensable injury by accident to her back on November 3, 1992 and the same was accepted as compensable pursuant to Form 21 Agreement approved by the Industrial Commission on December 15, 1992. Form 26 Agreements were subsequently approved on March 8, 1994 and October 19, 1994.
2. Temporary total disability benefits have been paid from November 4, 1992 to October 31, 1993 and from April 21, 1994 to April 27, 1994. Temporary partial disability benefits have been paid from November 1, 1993 to April 16, 1994 and from April 28, 1994 to August 6, 1994.
3. Employee-plaintiff returned to work at a higher average weekly wage on August 7, 1994.
4. Form 28B Reports were filed by the defendants on November 3, 1993, June 7, 1994 and November 20, 1994.
5. On January 7, 1994, Dr. Joshua S. Miller determined that employee-plaintiff had obtained maximum medical improvement with a five percent permanent partial impairment of the back. On September 27, 1994, Dr. Todd Chapman also indicated that employee-plaintiff had reached a maximum medical improvement with a five percent permanent partial impairment of the back.
6. Employee-plaintiff elected to obtain a second opinion as to her rating in accordance with N.C.G.S. § 97-27(b) and was seen by Dr. Allen Friedman at Duke University Medical Center on June 27, 1995. Dr. Friedman has opined that employee-plaintiff retains a ten percent permanent partial impairment of the back.
7. The parties agreed to stipulate into the record, without need for further authentication or verification, the following documents:
 1. All Industrial Commission Forms and Orders entered in connection with this claim attached as Exhibit 1 to the Pre-Trial Agreement;
 2. A complete copy of employee-plaintiff's medical records attached as Exhibit 2 to the Pre-Trial Agreement;
 3. Copies of correspondence attached as Exhibit 3 to the Pre-Trial Agreement.
***********
Based upon the competent evidence of record, the undersigned make the following additional
FINDINGS OF FACT
1. On November 3, 1992 plaintiff suffered an admittedly compensable injury by accident. Subsequent to that time she received medical treatment. On January 7, 1994, Dr. Joshua Miller determined that plaintiff had obtained maximum medical improvement and gave plaintiff a five percent permanent partial impairment of the back. On September 27, 1994, Dr. Todd Chapman, plaintiff's treating physician, determined that plaintiff had reached maximum medical improvement and assigned her a five percent permanent partial impairment of the back.
2. After plaintiff refused to accept the five percent rating assigned by Dr. Chapman and Dr. Miller, defendants filed a request for hearing on April 12, 1995 requesting a hearing on the permanent partial disability rating.
3. On April 3, 1995, plaintiff requested a second opinion on the permanent partial impairment rating pursuant to N.C.G.S. § 97-27(b). On April 11, 1995, defendants agreed to the second opinion. On June 27, 1995, plaintiff attended an evaluation performed by Dr. Alan Friedman. On December 21, 1995, Dr. Friedman opined that plaintiff retained a ten percent permanent partial impairment of the back.
4. On January 22, 1996, defendants offered to execute a Form 26 Agreement for the average of the three ratings using the original maximum medical improvement date relevant to subsequent claims. Plaintiff's counsel asked that the Form 26 Agreement be dated as of the last assessment, the date of Dr. Friedman's second opinion. Defendants, on January 24, 1996 agreed to compromise on the middle date, September 27, 1994, the date plaintiff was given a permanency rating by her treating physician.
5. This claim was initially scheduled for hearing on February 29, 1996 at 10:30 am. It was continued from that day because plaintiff's attorney was scheduled to argue before the Full Commission. The case was reset for May 9, 1996 at 8:30 am before Deputy Commissioner Mary Moore Hoag.
6. On May 8, 1996, plaintiff's counsel contacted defense counsel and indicated that plaintiff would execute the tendered Form 26 Agreement if defendants would also provide a medical evaluation with Dr. Chapman. The defendants agreed. Prior to the hearing, the parties informed Deputy Commissioner Hoag that they had reached a settlement of all matters in controversy by a Form 26 Agreement. By Order dated May 21, 1996, Deputy Commissioner Hoag ordered the parties to submit the Form 26 Agreement within thirty days. Plaintiff did schedule and attend the evaluation with Dr. Chapman but refused to execute the Form 26 Agreement.
7. Thereafter, the defendants advised Deputy Commissioner Hoag that they had submitted the Form 26 Agreement to plaintiff's counsel in accordance with the verbal agreement and that plaintiff's counsel had declined to execute and return that agreement. By letter of June 25, 1996, Deputy Commissioner Hoag directed counsel for the plaintiff to complete the Form 26 Agreement by July 22, 1996 and to return executed copies to the Commission. That letter also informed plaintiff's counsel that should the plaintiff fail to comply with the Order, Deputy Commissioner Hoag would dismiss plaintiff's case. Plaintiff, thereafter, altered the Form 26 Agreement, taking out the September 27, 1994 effective date which was the basis of the agreement and returned the signed and altered Form 26 Agreement to defendants.
8. Plaintiff continued to fail to comply with Deputy Commissioner Hoag's Order of May 21, 1996 and on August 9, 1996, Deputy Commissioner Hoag entered an Order requiring that the Form 26 Agreement as originally completed and agreed upon be signed by the plaintiff and her counsel and returned to Deputy Commissioner Hoag within fifteen days of the filing of the Order or the case would be dismissed with prejudice.
9. After plaintiff's failure to comply with May 21, 1996 and August 9, 1996 Orders of Deputy Commissioner Hoag to submit an executed Form 26 Agreement, on February 18, 1997, Deputy Commissioner Hoag entered an Order dismissing plaintiff's claim with prejudice.
10. As of September 27, 1994, plaintiff had reached maximum medical improvement and had sustained a 6.67 percent permanent partial disability of the spine.
11. At the time of her compensable injury by accident on November 3, 1992, plaintiff earned an average weekly wage of $280.00, yielding a compensation rate of $186.68.
12. As a direct and proximate result of her November 3, 1992 compensable injury to her back, plaintiff sustained a 6.67 percent permanent partial disability of the spine.
13. But for the delays and less than candid dealings of plaintiff and her counsel, plaintiff's date of maximum medical improvement relative to her entitlement to bring subsequent claims would have been September 27, 1994.
***********
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. On November 3, 1992, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained an injury to her back. N.C.G.S. § 97-2(6).
2. As a result of her November 3, 1992 compensable injury by accident, the plaintiff sustained a 6.67 percent permanent partial disability of the spine for which plaintiff is entitled to compensation at the rate of $186.68 per week for a period of 20.01 weeks. N.C.G.S. § 97-31(23).
3. Plaintiff reached maximum medical improvement on September 27, 1994 and in the interest of justice and to effectuate the purpose and intent of the Workers' Compensation Act, from that date her right to bring subsequent claims began to run. N.C.G.S. § 97-47.
4. Plaintiff is entitled to have defendant-employer provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen her disability. N.C.G.S. § 97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the undersigned make the following
AWARD
1. For her 6.67 percent permanent partial disability of the spine, defendant-employer shall pay permanent partial disability compensation to plaintiff at the rate of $186.68 per week for a period of 20.01 weeks. Said amount shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved in Paragraph 2.
2. A reasonable attorney's fee in the amount of twenty percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by deducting from that sum and paying directly to plaintiff's counsel.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
4. Defendant shall pay the costs.
This the ______ day of January 1998.
 S/ ____________________ WANDA BLANCHE TAYLOR DEPUTY COMMISSIONER
CONCURRING
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________ COY M. VANCE (RETIRED SEPTEMBER 1997) COMMISSIONER
WBT/cbd